Could the clerk read the next case please? Case number 313-0364 of the Board of Education of Gardner-South Wilmington High School District 73 Appellee by Kenneth Flory v. Village of Gardner Appellant by Bradley Knowlton and Scott Felt Mr. Knowlton, good morning. Good morning. May I say your jacket looks particularly good on you this morning. Thank you very much. He had an emergency delivery of his jacket this morning. I was very excited this morning and walked out without it. We're excited to have you here. Thank you very much. May it please the court. Counsel, my name is Bradley Knowlton and I represent the appellant, the Village of Gardner. Today's case presents the issue of whether TIF funds transferred from a municipality to a taxing district, such as a school, must be spent on a taxing district's capital costs. The case began with a one count complaint filed in the Grundy County Circuit Court for breach of contract. The Village appeals a ruling from that court of summary judgment in favor of the school district. The Village raises two issues which require this court to find that summary judgment was inappropriate. First, the written agreement between the parties entered into in 1986 is ambiguous and summary judgment is inappropriate as there are material issues of fact which must be resolved. Second, statutory interpretation of the Tax Increment Allocation Redevelopment Act, or TIF Act as I'll refer to it, requires that TIF funds transferred from a municipality to a taxing district must be spent on that taxing district's capital costs. I'd like to begin back in 1986. In late 1986, the Village of Gardner created its first TIF district. In creating that district, the Village passed an ordinance as well as a TIF redevelopment plan. The plan contains the goals, the aspirations of the TIF. It also includes language regarding cooperation with the governmental entities within the district, as well as a list of the projects which are expected to occur or aspirationally will occur within that district. Just ten days later, the Village enters into an agreement with the Gardner South Wilmington High School District. And that agreement deals with the use of athletic facilities that were owned by the school district. At that time, the facilities were some tennis courts and a baseball field. In exchange for use of those facilities, the Village is to turn over certain funds. And I'll outline the procedure for how those funds are determined at a later point, but they aren't a traditional payment for a license. They aren't a standard fee or a fee with an escalator as things go along. It becomes more complicated and is based on the TIF Act. In focusing on the lower courts holding, they determined that in granting summary judgment, that the funds had been paid over to the plaintiff for 26 years pursuant to the agreement without restriction. That was part of the circuit court's order granting summary judgment. Upon a motion to reconsider, the court acknowledged that that finding was in error. They found that there was no evidence in the record to support a finding that the funds had been turned over for 26 years. Now, in doing so, they considered four affidavits filed by the Village. These affidavits dealt with the intent of the parties at the time the agreement was struck, as well as the administration of the agreement. The affidavits involved both the current mayor, as well as previous mayors, and an outside TIF attorney who was engaged by the Village to assist in the administration. There was also an affidavit filed by the district. This affidavit contradicted the affidavit in the statements contained in the four affidavits from the Village. The trial judge found no ambiguity. That's correct. The trial judge's finding is that there was no ambiguity. However, it is our position that he makes a clear ruling that he's considered the four affidavits from the Village. And the affidavits go specifically to the parties' intent in entering into the contract. But if there's no ambiguity, you wouldn't look at the parole evidence, would you? That's correct. It's our position that if he's considered parole evidence, there must be some sort of ambiguity. And if you're required to resort to parole evidence to examine the party's intent, you've got contrary affidavits at this point, summary judgment is wholly inappropriate. There's a genuine issue of material fact that must be resolved through discovery, and therefore summary judgment at this point would be inappropriate. But again, if you don't have an ambiguity, then you don't go to that. That's correct. If there is no ambiguity in the contract, then you don't need to resort to the parole evidence, Your Honor. You're correct. Don't you have an integration clause in that contract? There is an integration clause, and that is referenced in the FLE's brief, which states that all items that were discussed are contained within the agreement. You're correct, Your Honor. So doesn't that exclude the affidavit information? We would argue that the affidavit information can be considered as to the ambiguity, and furthermore, although there is that integration clause, the statutory interpretation, which I'll bring up next, of the TIF Act, and there's a reference to the agreement being held within the laws of the State of Illinois pursuant to the TIF Act, requires a different finding as to the capital funds. I would like to briefly go over the actual license agreement that's entered, because I think it provides a good review of why the contract itself is ambiguous, as well as why funds must be spent on capital costs. The first section of the license agreement has a number of recitals. There's references within those recitals to both the Tax Increment Allocation Redevelopment Act, or TIF Act, as well as Article 7 of the Illinois Constitution, Article 7 dealing with intergovernmental cooperation. These references are illustrative of the necessity of authority for such type of agreement. If this were just merely a license, references to the TIF Act, intergovernmental cooperation wouldn't be necessary. There's additional evidence showing that this is more than just a license. The payment formula I mentioned before. The payment is based on increment created throughout the years. Every year, a percentage of the increment created is returned to the district. Over the life of the TIF district, the village of Gardner has turned over in excess of $4.5 million. The dispute over this last taxable year is nearly $500,000. This is in exchange for the use of the athletic facilities merely as a license. The ability to use these tennis courts, the baseball field. And there's no evidence in the record that these facilities were ever used by the village. Based on that evidence, we think it's clear that there are some inherent restrictions on the funds. And there is a dispute between the village and the district as to how those funds should be spent. What difference does it make if the facilities were never used? It's illustrative that there must have been some sort of inherent restriction on the funds that the village was turning the funds over for more than just the use of the facilities. It doesn't show that at all, does it? It just shows that you chose not to use the facilities that you've had a right to use. I believe it provides an inference that there might be some other restriction on the funds or that the funds were paid for more than just a license agreement. Well, we're supposed to look at the four corners of the document. And there's nothing in the four corners of the document that supports your interpretation. Your Honor, I believe that there is an ambiguity that requires you to go beyond the four corners of the document. And it's the reference to the restriction of the funds as being restricted by the laws of the state of Illinois and the Tax Increment Allocation Redevelopment Act. Okay, that section that you talk about, 3Q7, allows the village to make grants to the school district. But that's not what happened here. This is a license agreement. It's not a grant. And it's the grant money that has the restriction that it has to be used for capital development or capital improvements. Your Honor, 3Q7 falling within the definition section, the definition of redevelopment project costs. There's a list of what those costs are. The section actually states, to the extent the municipality, by written agreement, accepts and approves a portion of the taxing district's capital costs, and there's a restriction that it's resulting from the redevelopment project, that they can reimburse those funds if they're spent on capital costs. It's our position that this applies to any written agreement with a taxing district. Not just a grant or a separate agreement, but any time a municipality has a written agreement with a taxing district, which the school is, it's required to spend those funds on redevelopment project costs. Here, those have to be capital costs. In the 26 years of the license agreement, has the district ever made any capital improvements? It is our understanding in the record, I don't believe there's evidence as to the particular capital improvements that were provided. The issue which really caused the dispute, the school district turned over a budget as part of their invoice for the upcoming taxable year, and on that invoice, it broke out both capital expenditures of those TIF funds, as well as expenditures for salaries. Salaries of the superintendent, salaries of a janitor, a technology person, and payment of benefits there. It was the village's understanding throughout the agreement, and that's reflected in the affidavits, that the funds were always spent on capital costs. Is that reflected in the agreement? That is not reflected. There's no express restriction stated within the 1986 agreement that the funds be spent on capital costs. And the only ambiguity that you can point to is the ambiguity that you created by submitting the affidavits. Is that correct? The ambiguity raised there, yes, Your Honor. However, the statutory interpretation, or looking at the statute itself, it's our position that municipalities cannot spend funds unless they fall under redevelopment project costs. And there's an extensive list within the act of redevelopment project costs. In this case, one of those is transferring funds to a taxing district and providing them funds for their capital costs. If you look at the school district relies on Section 744C, and that deals with the municipal powers and duties section, the school district has relied on that section to argue that the funds can be turned over as merely part of a license, and that there are no restrictions on those funds. But if you look to the section right before, Section B of that statute, it provides that a municipality can enter into all contracts with property owners, individuals, as well as taxing bodies if it's incidental or in furtherance of the redevelopment plan. It's our position that if a municipality can enter into an agreement, and this seems to cover both private as well as public entities, then there's no need for the definition of redevelopment project costs. That section would not be necessary to break out the individual costs municipality can incur. If you can merely rely on the municipal powers and duties section to turn funds over, there's no restriction on any funds that a municipality turns over to a taxing district, to a developer, or anyone they're making a grant or an agreement with. And the basic purpose of TIF is to eliminate the blight, reduce unemployment, and take the funds and redevelop an area, put the funds back into that TIF district, allowing the funds to be spent on non-capital expenditures, on salaries, on flights, whatever they may be. If they're not going into hard costs that are going to extend within the TIF district, beyond the life of the TIF district, then we're not accomplishing the very purpose that the Tax Increment Allocation Redevelopment Act was passed for. In essence, you're saying the two parties ended up in an improper contract? Well, Your Honor, the agreement when it was written in 1986, it's our position that it's ambiguous and it's not particularly clear. But if the funds have no restrictions on them, then that is improper. You're correct. There must be some sort of restriction based on the portions that we talked about. If the contract's not ambiguous and you wouldn't go into pro-evidence, then what would be the remedy if there's a violation of the statute? Could you repeat your question, Your Honor? What would be the remedy if you say the statute's being violated and if the contract is not ambiguous? I believe the agreement itself would have to be invalidated as a matter of public policy and there would have to be some sort of agreement between the parties as to how that matter would be handled going forward as far as transfer of funds. Would there have to be an agreement between the parties? Yes, Your Honor. So you'd have to put some action to rescind the contract? I believe that's correct. The contract could be invalid at that point and there would have to be another meeting of the school district to figure out how they can be reimbursed for their capital costs. But there is no action like that in front of it? No, there is not, Your Honor. I'd like to follow up with Justice Carter's question and to some degree Justice McDade's questions. Justice McDade has posited some questions saying in the 26 years this agreement was honored and Justice Carter talks about if the contract itself was unlawful, can it be enforced? I'm pretty methodical when I prepare for oral arguments and so I read the contract very carefully and it talks about it will continue until the district is terminated. By statute, a TIF district in 1986 could not endure longer than 23 years. And in looking at statutes under certain situations, that's been extended now to 35 years, but not when there's a contract, an intergovernmental agreement. And specifically just to make a good record for you, it's chapter 65 ILCS 5-11-74.4-3.5 subsection D. Why hasn't the village argued that this agreement in 1986 terminated in 2009 after 23 years and there's nothing to enforce? And I even wonder if the payments from 2009 until 2011 shouldn't be reimbursed. Your Honor makes a good point there. In extending the TIF district, which was required to extend it beyond its normal period, it's the village's position that in honoring that contract, in good faith, that they were required to apply that beyond the period of the initial TIF district. Was there ever an ordinance adopted by the municipality extending the TIF district time? Your Honor, I don't believe there is an ordinance within the record showing that the TIF district was extended. However, it was extended. It was? All right. Well, then my question is, you've answered my question, and hence the purpose of oral arguments. Thank you, Your Honors. Do you have any other questions? Yes. Mr. Flory, good morning. Good morning, Your Honor. May it please the Court, counsel. Good morning. My name is Ken Flory, and I'm one of the attorneys for Gardner High School. All of you have a very good grasp of the TIF statute, so I won't go into much detail but just to highlight some of the relevant background elements of the TIF Act. The Act allows the village, as it has done, to create a TIF district by which it collects taxes which otherwise would have gone to the schools and other local governments for developmental purposes and for community improvement purposes. As we've discussed, the Act allows for a 23-year term which can be extended and has occurred through the 35-year term. Do you agree that there was an ordinance that properly extended it? Yes, it requires legislative action followed by an ordinance. The state legislature has to authorize the extension from 23 to 35. As I said, over half of the TIF district funds come from the schools because of the tax rates involved in the property tax bills. In 1986, the village did adopt the TIF district, and there are two sections that are relevant to our discussions today. Section 12 of the village's TIF plan provides that the village expressly identifies the need for recreational facilities in the community. Section 12 also expressly identifies the need for village and other intergovernmental cooperation with the schools to provide recreational facilities. So the plan was initiated with this license agreement in mind. After the plan was adopted, a few weeks later, the license agreement was entered into. There's one section in the TIF plan that council identifies in his reply brief for the first time, which is Section 15. They argue in the reply brief, which is a misdirection to this court, and it wasn't argued in the trial court, that a separate provision exists to limit the use of the funds that the district receives. However, they omit the word grant. Section 15, which doesn't apply to our case, provides that the village can grant local governments funds for their capital improvements. This is not a grant agreement. This is a license agreement. This is a straightforward contract that's agreed to by this village and the school, by which the school would agree to give the village a license in return for payments from the village over the period of years of the TIF district's existence. Can I interrupt you? I know it's a bit unfair, but can't the budget be restructured so that the $400,000 would go to capital improvement? I mean, some of it went to salaries, but are we here because the school is not spending the full amount they received from TIF on these recreational facilities? Without limitations in the contract or the statute, the school uses the TIF funds for all purposes authorized by the school. So you're telling me that the money you get couldn't be directed back into those recreational facilities? There would not be capital expenses to use up, correct. The most expensive part of operating a school are its personnel, as any business. And that's the personnel cost. If we built a new high school, I suppose we could find some uses for those. It's interesting because the TIF plan talks about how it's important to have good schools, but then they focus only on the recreational facilities. They assume we're doing our job, which we do very well. But again, you just don't have enough repairs over the period of years to devote those payments towards. Okay, you've answered my question. Now in the writing itself, there were no conditions or limitations on what you did with the licensed funds, right? Correct, there were no limitations under the agreement. There's no ambiguity in the agreement about how the funds can be used. So your point is that you're violating the statute? We're not violating the statute. Let me address the statute because the statute has two sections. There are two types of agreements under the TIF Act. There's a development agreement under section, as counsel has cited, under section 3Q, and that's your agreement that the village grants money to schools, most commonly private parties, to build something, to put in a water tower, put in a warehouse, pretty common. There's also acquisition agreements under the TIF Act, which is part of improving a community and developing a community. These acquisition agreements are under 4C, and these acquisition agreements are a necessary part of development. They allow for leases, mortgages, purchases, easements, condemnations of property. So the village can acquire property through a section 4C agreement, and then they can grant funds through a section 3Q agreement. And Judge Marsalia correctly interpreted the statute to say these are two separate components of the TIF Act, both of which are necessary for the overall purpose, but they're independent. You can't graft on limitations under 3C into 4Q. It doesn't make sense. If you think about it, if a bank gives you a mortgage or a private owner sells you a piece of his or her land, grants you an easement, grants you a license to use that property, the village pays for that easement or mortgage. The concept that that money that's been paid by the village, which is TIF funds, is restricted. The receiver of that money can only use it to fix the roof, the bank, I guess, to put an elevator in, or whatever reason. That's absurd. That interpretation that an acquisition agreement funds have the same restrictions as a development agreement is untenable. That would freeze any conveyance of property rights under Section 3Q if banks had limitations of what the bank could use, what the private property owner could use, and certainly what the school district could use. The school district in this capacity is no different than the bank or the property owner who conveys an interest in its property to the village. Again, as we all agree, it's part of the overall TIF plan, which is for recreational activities for the general public. Judge Marcellia ruled that, again, the 3Q limitations on TIF funds do not apply to these 4C acquisition contracts, of which the license agreement is. The village tries to take the clear contract language, which has no ambiguity, and the clear statutory language, which has no ambiguity, and tried to create questions of fact. And they submitted affidavits to the judge, which the judge read, as he is required to do. I believe the one he said he considered, that simply means he read it. And he read the affidavits and he read the pleadings, and he determined that he was dealing with questions of law, which are appropriate for summary judgment. Interpretation of an unambiguous contract and interpretation of the statute. He said there was no ambiguity. Correct. No ambiguity. And you can't create an ambiguity, as the village tried to do, saying that the affiant's subjective belief regarding the intentions of the party is 1986. Well, the ambiguity has to come from the writing itself. Correct. You cannot create one subsequently. Otherwise, there would be no contract that had any force, because if parties could then later submit an affidavit trying to change the contract terms after 26 years, it would destroy the contract. And the village cannot try to add terms to the contract through an affidavit that didn't exist when it was entered into. The case law is abundantly clear that the court should not look to a party's subjective beliefs, parole evidence, after the contract has been entered into, if there's no ambiguity. Instead, looking at the plain language of the contract. And the reference to the TIF Act, that's not an ambiguity, as the villages argued. There's nothing wrong with referring to another statute. That doesn't create an ambiguity in the use of the funds. And when you look to the TIF Act and the two types of agreements that are authorized, and this is an acquisition agreement, a license agreement, it's all perfectly in sync and there's no ambiguity in the contract or the statute. So there's no pleading trying to rescind this contract, it's interpreting the contract. Correct. And if there's no ambiguity and your opponent's argument is that it's a violation of the statute, and you counter saying there's no violation of the statute because they're two separate sections and you can't read them together, they're separate sections. That's your argument? Correct. That's Judge Marciano's rule, yes. And your opponent is saying that these all have to be read together, correct? They're saying you have to blur and merge and commingle the two separate sections that are not. They're completely different concepts. It would be impossible to do that. It would be absurd to do that, and you can't interpret a statute or a contract to an absurd result. And impossible. Again, I think all of you have an excellent grasp of the relevant issues and the points raised by counsel that there is no ambiguity in the contract. The statute is clear that this license agreement and the payments received by the school cannot and should not be limited to the limitations on a development agreement. Under Section 3Q, it's a 4C license agreement. The contract is clear, no restrictions. The statute is clear for an acquisition agreement, no restrictions. And we ask that you affirm Judge Marcelli's ruling in favor of the school district granting summary judgment on the breach of contract claim. Question? Where do we go from here if we agree it should be affirmed your breach of contract action was not an action for specific performance? It's just a breach of one year. So what happens if we agree with it? If you agree with us, Judge, there was a motion for summary judgment, two separate motions, one on liability, which the judge ruled in favor of the school, and one on damages, saying this breach resulted in a damage to the school district. You didn't receive over $400,000 that you should have received for 2012. We don't have disputes going forward. The payments have been made. So for whatever reason this popped up, it's a single year that's at issue at this point. We did not have to file a suit in 2013 because the payments were made. Thank you. Thank you, Mr. Fluhrer. The judge said it wasn't in any ambiguity, but it's up for us. We can decide that too. You absolutely can decide that, agree with or disagree with the trial court. Thank you. Thank you. Mr. Nolden, rebuttal. May it please the court. Your Honors, I first want to address Mr. Flory's discussion of the inability of the TIF Act to function if there's restrictions on these funds. He points to a bank and the inability of paying a bank or a private individual to acquire an easement or to acquire the property in fee simple, whatever type of interest they want to acquire. There's not a restriction there. If you look to the definition section of redevelopment project costs, we focused on Q7, but section Q2 deals with property assembly costs particularly. It allows for the expenditure of funds for the acquisition of land as well as rights and interests. There's no reference to taxing districts, and that's why we're focused on section 7, a taxing district's capital costs. Section 2 takes care of any issue you would have with the acquisition of land or interests from a private person. We agree that there's no restriction once a private individual receives those funds from a municipality, but there are when you're dealing with a taxing district. I'd also like to point to the TIF redevelopment plan, which was briefly discussed. As noted, there's a number of sections which deal with the athletic facilities to be built, to be developed, and that's the particular word that's important in this case. It doesn't talk about the acquisition of athletic fields and facilities. It talks about development, building more, spending funds to create hard assets, capital assets that remain in the district, and improve the property values and reduce blight. You had the original term of the contract, then it was extended. Would you keep on developing every year? I believe the funds... Well, as far as the funds, it's the village's position going forward that the funds didn't need to be spent specifically on the athletic fields and facilities. It needed to be spent just on capital costs as long as they were consistent with the redevelopment plan. In looking at that, the village's position is that the capital costs can be anything falling under the hard assets, whether that's computers, acquisition. We'd love it if they would spend it on building more athletic facilities, but any capital assets. It's not restricted to the particular athletic fields and facilities as capital assets in general and improving the area is consistent with the redevelopment plan. Finally, I want to point to one other issue, one other portion of the TIF Act, and that's the accounting and reporting section. And that's really what triggered some additional attention. In 2010, there was an amendment to the TIF Act, and it required some additional accounting and reporting on behalf of the village. They were required to provide certifications, have an outside individual look at those. And what they did is they had to provide copies of the intergovernmental agreements that they have with any taxing district and certify that the costs and funds are being spent in accordance with the TIF Act. It's our position that this section shows clearly that there must be some sort of restriction on funds transferred to a taxing district, and that in that case, it needs to be that they're spent on capital costs consistent with the redevelopment plan. And reviewing that, that's what caused the village to raise an issue as to the funds provided in the O&M budget. Finally, one piece of additional evidence that the school district was providing, and realized this was more than a license, if this was merely a license, they should have provided us with an invoice for the turnover of funds. In this case, they're providing a budget showing how the funds were spent. It's a clear acknowledgment that there must have been some sort of restriction on the funds and that the village had to approve the specific expenditure of the funds. In this case, to confirm that they were spent on capital costs and in accordance and furthering the objectives of the redevelopment plan. I have nothing further, but I'm happy to answer any questions you might have. Was there a precondition before you set the funds that you had to make approvals of their use of the funds in the agreement? The agreement itself just requires a turnover of funds and provides a certain time period where those funds are turned over. There wasn't a condition on your approval? Correct. That condition comes from the statute rather than from the express language of the agreement. Thank you. Thank you. I would like to thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand on recess for a panel change.